164 Cal.App.4th 571 (2008)
In re CHEYANNE F., a Person Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent,
v.
PATRICIA K., Defendant and Appellant.
No. E044339.
Court of Appeals of California, Fourth District, Division Two.
June 6, 2008.
*573 Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.
Joe S. Rank, County Counsel, and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.
Lori A. Fields, under appointment by the Court of Appeal, for Minor.

OPINION
McKINSTER, J.
Patricia K. appeals from an order terminating her parental rights, pursuant to Welfare and Institutions Code section 366.26. (All further statutory citations refer to the Welfare and Institutions Code unless otherwise indicated.) She contends that the juvenile court's finding that the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) did not apply is erroneous because the Riverside County Department of Public Social Services (DPSS) omitted required information from the ICWA notification forms. We conclude that Patricia has failed to show that any omission was prejudicial.

FACTUAL AND PROCEDURAL HISTORY
Because of the limited nature of the issue raised in this appeal, a brief statement of the factual and procedural history will suffice.
Cheyanne was born with a severe respiratory problem. She was removed from her mother's care immediately after her birth when DPSS determined that Patricia had a long history of drug abuse and that she had used methamphetamine during her pregnancy with Cheyanne. A section 300 petition was filed, and Cheyanne was subsequently declared a court dependent. The court denied Patricia reunification services because of her failure to reunify with her four older children, all of whom were in the dependency system in Los Angeles County, and because of her continuing drug abuse. *574 The court ordered reunification services for Cheyanne's father, John F., but terminated services at the six-month review hearing because John refused to participate in reunification. At the section 366.26 hearing, the court terminated parental rights and selected adoption as Cheyanne's permanent plan. Patricia appealed. John is not a party to this appeal.

LEGAL ANALYSIS

ANY DEFICIENCY IN THE ICWA NOTICE WAS HARMLESS
At the outset of the dependency proceedings, John and Patricia submitted parental notification of Indian status forms. Patricia stated that to the best of her knowledge, she has no Indian ancestry. John told the social worker that he is a registered member of the "Blackfoot" tribe.[1] DPSS sent Judicial Council former form JV-135, "Notice of Involuntary Child Custody Proceedings," to Indian Child and Family Services, to the Bureau of Indian Affairs and to the Blackfeet Tribe. The JV-135 forms included all of the information that John provided concerning his ancestry but omitted virtually all of the information requested concerning Patricia, including her place of birth and the names of her parents and grandparents.
In court during the jurisdiction and disposition hearing, John informed the court that he is a registered member of the Blackfeet Tribe. The court ordered him to provide tribal membership information to DPSS no later than June 30, 2006. John was never able to provide his membership information. He was also not able to provide any contact information or tribal membership information for his father, C.F. DPSS contacted John's mother, who was unable to provide any further information which might assist in establishing John's tribal membership or eligibility. John's mother told DPSS that she had no information as to whether either John or his father was a registered member of the tribe. She stated that neither she nor his father had registered John with the tribe.
On June 30, 2006, the tribe responded to the original JV-135 notice with a letter stating that in order to determine whether Cheyanne was enrolled or eligible for membership, it needed additional information concerning extended family members, including "full names, maiden names, dates of birth, and if deceased, please note [sic."] It emphasized that it needed the names of "the grandparents." It asked that DPSS fill out a family tree chart which it enclosed with the letter. DPSS indicated that it filled out the family tree with the information "obtained from the parents on the JV-135 form" and sent it to *575 the tribe approximately one week later.[2] On December 12, 2006, DPSS again sent form JV-135 to the Blackfeet Tribe, the Bureau of Indian Affairs and Indian Child and Family Services. On January 5, 2007, the tribe responded with a letter similar to the one it sent on June 30, 2006. The letter stated that without "full names, maiden names, dates of birth, and if deceased [sic"] it was unable to determine tribal membership. The letter referenced Cheyanne. The tribe also sent an identical letter referencing Patricia.
At the section 366.26 hearing, DPSS asked the court to determine that ICWA does not apply. Counsel for DPSS stated that the social worker had informed the tribe by e-mail that she had no further information. The court found that ICWA does not apply.
Patricia now contends that this ruling was erroneous because DPSS failed to perform its mandatory duty, pursuant to ICWA and section 224.2, subdivision (a), to provide the tribe with Patricia's place of birth and the names of her parents and grandparents.[3] She contends that both ICWA and section 224.2 require strict compliance with notice provisions, and that the omission of that information rendered the notice insufficient as a matter of law. She points out that her place of birth and the names of her parents were known to DPSS.
DPSS points out that Patricia has not cited any cases in which the omission of information concerning a child's non-Indian relatives has required reversal for failure to provide adequate notice in compliance with ICWA. It contends that In re Antoinette S. (2002) 104 Cal.App.4th 1401 [129 Cal.Rptr.2d 15] (Antoinette S.) holds that the omission of information concerning non-Indian relatives is harmless error if the notice included all known information about the Indian parent and relatives. However, Antoinette S. does not discuss whether a notice pursuant to ICWA is deficient because it fails to provide all known information concerning the child's non-Indian parent and other non-Indian relatives, nor does it hold that such an omission may be harmless. Rather, the court held that an error in proceeding with the hearing on termination of parental rights less than 10 days after ICWA notice was mailed *576 to the Bureau of Indian Affairs (BIA) was harmless error because the BIA ultimately found no evidence of Indian heritage. (Antoinette S., at pp. 1412-1413.) The court then held that the juvenile court's failure to make an explicit finding that ICWA did not apply was harmless for the same reason, i.e., that the BIA ultimately found no evidence of Indian heritage for Antoinette. (Antoinette S., at pp. 1413-1414.) Antoinette S. is therefore entirely inapposite.
We now turn to the merits of Patricia's contentions. We disagree that ICWA mandates reversal, without regard to prejudice, if there is any deficiency in the notice given to the tribe or the BIA. Rather, where notice has been received by the tribe, as it undisputedly was in this case, errors or omissions in the notice are reviewed under the harmless error standard. (Nicole K. v. Superior Court (2007) 146 Cal.App.4th 779, 784 [53 Cal.Rptr.3d 251]; In re Junious M. (1983) 144 Cal.App.3d 786, 794 [193 Cal.Rptr. 40].) We conclude that the omission in this case was harmless.
The purpose of the ICWA notice provisions is to enable the tribe or the BIA to investigate and determine whether the child is in fact an Indian child. (In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1421 [285 Cal.Rptr. 507].) Notice given under ICWA must therefore contain enough information to permit the tribe to conduct a meaningful review of its records to determine the child's eligibility for membership. (In re Jennifer A. (2002) 103 Cal.App.4th 692, 705 [127 Cal.Rptr.2d 54]; In re Francisco W. (2006) 139 Cal.App.4th 695, 703 [43 Cal.Rptr.3d 171].)
Although both the federal ICWA regulations (25 C.F.R. § 23.11(d)(3) (2008)) and section 224.2, subdivision (a) require the agency to provide all known information concerning the child's parents, grandparents and greatgrandparents without distinguishing between Indian and non-Indian relatives, it does not follow that the omission of information concerning non-Indian relatives is necessarily prejudicial. An Indian child is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) Information concerning the child's non-Indian ancestors is therefore typically less relevant to the tribe's determination of the child's eligibility for membership than information concerning the child's Indian ancestors. (See In re Louis S. (2004) 117 Cal.App.4th 622, 631 [12 Cal.Rptr.3d 110] [agency must provide all known information to the tribe, "particularly that of the person with the alleged Indian heritage"].) There may, of course, be circumstances under which information concerning the child's non-Indian parent is relevant to the child's eligibility. A tribe might, for example, exclude from membership children of tribe members who married outside the tribe. (See Santa *577 Clara Pueblo v. Martinez (1978) 436 U.S. 49, 51, [56 L.Ed.2d 106, 98 S.Ct. 1670] [tribe in question extended membership to children of Indian men who married outside the tribe, but excluded children of Indian women who married outside the tribe].) Under that circumstance, the tribe might reasonably want to determine independently whether the spouse of the alleged Indian parent is a member of the tribe. There is no indication, however, that the Blackfeet Tribe has any policy which renders information concerning Patricia or her parents or grandparents relevant to the tribe's determination as to Cheyanne's eligibility.
Deficiencies in an ICWA notice are generally prejudicial, but may be deemed harmless under some circumstances. (In re S.B. (2005) 130 Cal.App.4th 1148, 1162 [30 Cal.Rptr.3d 726]; Antoinette S., supra, 104 Cal.App.4th at pp. 1411-1413.) In Nicole K. v. Superior Court, supra, 146 Cal.App.4th 779, the court held that omission of the mother's birth date from an ICWA notice was harmless because there was "no basis to believe" that providing the mother's birth date "would have produced different results concerning the minors' Indian heritage." (Nicole K., at p. 784.) (4) Similarly, in the absence of any indication that information concerning Patricia's family was relevant to the tribe's inquiry, there is no basis upon which to conclude that the outcome would have been different if DPSS had provided Patricia's place of birth and the information concerning her parents and grandparents.
It is arguable that the omission was prejudicial because the tribe apparently declined to make any inquiry into Cheyanne's eligibility for membership until DPSS provided it with information as to all of Cheyanne's parents, grandparents and great-grandparents. However, neither John nor his mother was able to provide an address, telephone number or date of birth for either John's father or his paternal grandfather, or any information that either was registered with the tribe. If the tribe truly would not research its records to determine Cheyanne's eligibility for membership without having complete information concerning all extended family members, then in the absence of complete information concerning John's father and grandfather, providing the information concerning Patricia's family would not have changed the result.
In response to DPSS's argument that it substantially complied with ICWA's notice requirements, Patricia asserts that the language of section 224.2 is mandatory, and that it does not contain an exception which permits a social services agency to omit information concerning the child's non-Indian ancestors. We agree that the statute does not contain any such exception. However, Patricia does not cite any authority which suggests that in enacting section 224.2, the Legislature intended to override existing case law, cited and discussed above, which holds that errors and omissions in an ICWA *578 notice may be deemed harmless under some circumstances. Section 224, which sets forth the Legislature's findings and statement of intent in enacting section 224 et seq., does state, "In any case in which this code or other applicable state or federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child, or the Indian child's tribe, than the rights provided under the Indian Child Welfare Act, the court shall apply the higher standard." (§ 224, subd. (d).) However, the language of section 224.2, subdivision (a)(5)(C), which mandates the inclusion in an ICWA notice of information pertaining to the child's lineal ancestors, is identical in substance to the language contained in the analogous federal regulation.[4] There is nothing in either section 224 or section 224.2 which indicates any intention that courts should apply section 224.2, subdivision (a) differently than they applied the federal regulation prior to the enactment of section 224.2. In contrast, In re J.T. (2007) 154 Cal.App.4th 986 [65 Cal.Rptr.3d 320], held that by codifying language contained in former rule 1439 of the California Rules of Court, section 224, subdivision (d) and section 224.2, subdivision (a)(3) reflect the Legislature's intent to impose a heightened standard for determining which tribes must receive notice than does ICWA. (In re J.T., supra, at p. 993.)
In connection with her contention that section 224.2 absolutely mandates inclusion of all information pertaining to the child's ancestors, Patricia quotes a portion of the preamble to Statutes 2006, chapter 838, the bill which enacted section 224.2. There, the Legislature stated, in pertinent part, "This bill would revise, recast, and expand various provisions of state law to, among other things, apply to certain children who do not come within the definition of an Indian child for purposes of the Indian Child Welfare Act, and would provide that a parent, Indian custodian, or tribe may intervene in child custody proceedings involving children with Indian ancestry, as specified. The bill would also authorize a tribe to participate in dependency proceedings involving an Indian child, as specified. The bill would provide that an Indian child's parent's consent to adoption or guardianship is invalid unless it meets specified standards. The bill would specify that if an Indian custodian or biological parent of an Indian child in guardianship proceedings *579 lacks the financial ability to retain counsel and requests that appointment, certain provisions of the Indian Child Welfare Act regarding court-appointed counsel would apply" (Stats. 2006, ch. 838.) However, nothing in this language indicates any intent to apply a stricter standard concerning the contents of ICWA notices.

DISPOSITION
The order terminating parental rights is affirmed.
Hollenhorst, Acting P. J., and Richli, J., concurred.
NOTES
[1] The tribe's official name is "Blackfeet Tribe."
[2] The family tree is not contained in the record on appeal. We assume, based on the statement in the DPSS report, that it contained no information concerning Patricia which was not contained in the original JV-135 form.
[3] Section 224.2, subdivision (a) codifies notice requirements set forth in the federal regulations implementing ICWA. (In re Mary G. (2007) 151 Cal.App.4th 184, 209 [59 Cal.Rptr.3d 703].) Both the federal regulation and section 224.2, subdivision (a) require the social services agency to provide as much information as is known concerning the child's direct lineal ancestors, including all names of the child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known. (25 C.F.R. § 23.11(d)(3) (2008); Welf & Inst. Code, § 224.2. subd. (a)(5)(C).)
[4] Title 25 Code of Federal Regulations part 23.11 provides that the notice must include "[a]ll names known, and current and former addresses of the Indian child's biological mother, biological father, maternal and paternal grandparents and great grandparents or Indian custodians, including maiden, married and former names or aliases; birthdates; places of birth and death; tribal enrollment numbers, and/or other identifying information." (25 C.F.R. § 23.11(d)(3) (2008).)

Section 224.2, subdivision (a) provides that the notice must include "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (§ 224.2, subd. (a)(5)(C).)