**The PEOPLE of the State of Colorado,**
**Petitioner–Appellee,**

**In the Interest of A.R.Y.-M., a Child,**

**and**

**Concerning R.Y., Respondent–Appellant.**

No. 09CA2295.

Colorado Court of Appeals,
Div. V.

March 18, 2010.

David R. Fine, City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, for Petitioner–Appellee.

Kelli Narans, Guardian Ad Litem.

Terry Ross, Denver, Colorado, for Respondent–Appellant.

Opinion by Judge NIETO.*

R.Y. (mother) appeals from the judgment terminating the parent-child legal relationship with her son, A.R.Y.-M. She asserts reversal is required for failure to comply with various provisions of the Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901 to 1963 (2006) (ICWA). We conclude that although there were errors in compliance with the ICWA's notice provisions, those errors were harmless, and consequently, we affirm the judgment.

## I. Factual and Procedural Background

The Denver Department of Human Services (the department) filed a dependency and neglect petition on A.R.Y.-M.'s behalf shortly after his birth. Mother, who was a minor, was also in the department's legal custody.

The caseworker reported that mother had Native American ancestry through her biological father. Accordingly, notice was sent to the Navajo Nation and the Eastern Shawnee Tribe of Oklahoma. The Navajo Nation responded it had "been unable to verify" that A.R.Y.-M. was eligible for enrollment and asked the department to notify the tribe if the department received additional information that would assist in that determination. The Eastern Shawnee responded that the child was not a member of the tribe and was not eligible for enrollment.

Mother received services for almost three years until, after a contested hearing, the court terminated her parental rights.

## II. ICWA

Mother asserts several violations of the ICWA's notice provisions which she claims warrant reversal of the judgment. She contends the notice sent

- was "hopelessly vague," because it stated only that the department was "involved" with A.R.Y.-M.;
- did not include a copy of the original or amended dependency and neglect petition;
- did not contain any information about A.R.Y.-M.'s birthplace;
- contained only "minimal" information about A.R.Y.-M.'s grandparents;
- did not inform the tribe that it was entitled to a twenty-day extension to file a response;
- did not inform the tribe that it had a right to transfer the matter to tribal court; and
- did not state the information in the notice should be kept confidential.

We agree the notices sent did not comply with all the provisions in the ICWA. However, because the Navajo Nation responded that it could not verify enrollment or eligibility for enrollment for A.R.Y.-M. and mother provided the department with no further information to assist in that determination and the Eastern Shawnee Tribe responded that A.R.Y.-M. was not an Indian child, we conclude any errors in the notice are harmless.

### A. Law

Congress enacted the ICWA because of concerns over the involuntary separation of Indian children from their families for place-

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

ment in non-Indian homes. *B.H. v. People in Interest of X.H.*, 138 P.3d 299, 301 (Colo. 2006). The purpose of the ICWA is to protect Indian children who are members of or are eligible for membership in an Indian tribe. 25 U.S.C. § 1901(3) (2006). The Colorado General Assembly has expressly provided for compliance with, and consistent application of, the ICWA. *See* § 19–1–126, C.R.S. 2009.

The ICWA applies when the state seeks to place an Indian child in foster care or when the state seeks to terminate parental rights. *See* 25 U.S.C. §§ 1911, 1912 (2006). Under those circumstances, whenever the court knows or has reason to know that an Indian child is involved, the party seeking placement or termination must provide notice to the child's tribe or his or her parent's tribe, or to the Bureau of Indian Affairs (the BIA) if the tribe cannot be identified or located. 25 U.S.C. § 1912(a) (2006); *People in Interest of S.R.M.*, 153 P.3d 438, 440 (Colo.App.2006).

The Department of the Interior has promulgated Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584 (Nov. 26, 1979) (Guidelines), to aid in the interpretation and application of the ICWA. *S.R.M.*, 153 P.3d at 441. The Guidelines were authored by the BIA and represent that department's interpretation of the ICWA. Although they are not binding, they have been considered persuasive by state courts. *B.H.*, 138 P.3d at 302 n. 2; *S.R.M.*, 153 P.3d at 441.

The Guidelines set forth specific categories of information a social services department should include in its notice to a tribe under the ICWA. 25 C.F.R. § 23.11(a), (d), (e). Notice must include the name, birth date, and birthplace of the Indian child; his or her tribal affiliation; a copy of the dependency petition; the petitioner's name; a statement of the right of the tribe to intervene in the proceeding; and information about the Indian child's biological mother, biological father, maternal and paternal grandparents and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, birth dates, places of birth and death, current and former addresses, tribal enrollment numbers, and other identifying information. Guidelines, 44 Fed.Reg. at 67,-

588; 25 C.F.R. § 23.11(a), (d); *S.R.M.*, 153 P.3d at 441.

Although "[t]he party asserting the applicability of ICWA has the burden to produce the necessary evidence for the trial court to determine if the child is an 'Indian child,'" *People in Interest. of A.G.-G.*, 899 P.2d 319, 322 (Colo.App.1995), the threshold information necessary to provide notice "was clearly not intended to be high." *B.H.*, 138 P.3d at 303.

Moreover, a social services department need only include in the notice the information known to it. *People in Interest of N.D.C.*, 210 P.3d 494, 497 (Colo.App.2009); *In re Louis S.*, 117 Cal.App.4th 622, 12 Cal. Rptr.3d 110, 115 (2004) (the social services department must provide all known information to the tribe).

▬ This court reviews any errors in the notice given to see if they are harmless. *N.D.C.*, 210 P.3d at 498; *S.R.M.*, 153 P.3d at 441–42. If, after receiving all known information, a tribe responds that a child is not an Indian child, any errors in the notice are deemed to be harmless. *In re E.W.*, 170 Cal.App.4th 396, 88 Cal.Rptr.3d 338, 344 (2009) (errors in improperly addressing notice not prejudicial when tribe responds that children at issue are not Indian children); *In re J.T.*, 154 Cal.App.4th 986, 65 Cal.Rptr.3d 320, 325 (2007) (error in serving person other than designated agent is harmless when the tribes responded to the notice that the children were not members or eligible for membership in the tribes).

## B. Analysis

Mother correctly asserts that the notice here did not clearly tell the tribes the nature of the department's involvement with A.R.Y.-M.; did not include a copy of the original or amended dependency and neglect petition; did not contain any information about A.R.Y.-M.'s birthplace; contained only minimal information about A.R.Y.-M.'s grandparents; did not state the tribe was entitled to a twenty-day extension to file a response; did not state the tribe had a right to transfer the matter to tribal court; and did not state the information in the notice should be kept confidential. However, we conclude the errors here were harmless.

### 1. The Eastern Shawnee Tribe

■ The Eastern Shawnee responded that A.R.Y.-M. was not enrolled and was not eligible to enroll. The only information mother asserts that was not included in the notice that might have enabled that tribe to conclude A.R.Y.-M. was enrolled or was eligible for enrollment was information about his birthplace and his grandparents. However, mother does not assert that (1) she ever provided this information to the department or it knew the information and omitted it from the notices; (2) she later provided this information to the department and it did not send new notices; or (3) including this information would have resulted in the conclusion that A.R.Y.-M. was enrolled or was eligible to enroll in either notified tribe. Therefore, because all known information was provided to the tribes, and mother has not shown that any new information would have resulted in a different tribal determination, she has not asserted reversible error. *Cf. In re Cheyanne F.*, 164 Cal.App.4th 571, 79 Cal.Rptr.3d 189, 193 (2008) (omission of information known to a social services department may be harmless error when there is "no basis to believe" that providing that information "would have produced different results concerning the [children's] Indian heritage"). The other information omitted from the notice did not affect the tribe's ability to determine whether A.R.Y.-M. was an Indian child within the meaning of the ICWA.

### 2. The Navajo Nation

■ The Navajo Nation responded that it was unable to verify enrollment and asked the department to forward additional information, if such information were obtained. Although this response was more equivocal than that of the Eastern Shawnee, the same analysis applies. Mother never provided the department with additional information, and the department forwarded to the Navajo Nation the information mother did provide. Therefore, we conclude any error was harmless. *Id.*

### III. Notice of the Termination Hearing

■ Mother also asserts reversal is required because notice of the termination hearing was not sent to the tribes. We disagree.

Mother relies on *S.R.M.*, 153 P.3d at 442–43, for the proposition that unless a tribe explicitly states it will not intervene in a dependency and neglect proceeding, the social services department must provide notice of the termination hearing. Here, neither tribe expressly stated that it would not intervene. However, the Eastern Shawnee Tribe stated A.R.Y.-M. was not enrolled and was ineligible to enroll. This statement is the equivalent of an express statement that the tribe will not intervene, because if the child is not eligible to enroll or is not enrolled, the ICWA does not empower the tribe to intervene. 25 U.S.C. § 1903(5) (2006) (definition of Indian child's tribe); 25 U.S.C. § 1911(c) (2006) (ability of child's tribe to intervene); *see also In re B.R.*, 176 Cal.App.4th 773, 97 Cal.Rptr.3d 890, 894 (2009) (Indian tribes may take jurisdiction over or intervene in state court proceedings involving Indian children).

■ Similarly, the statement of the Navajo Nation that it could not determine the child's eligibility to enroll is sufficient to eliminate the requirement of notice of the termination hearing. When the tribe is provided with all known information, but cannot determine enrollment or eligibility for enrollment based on that information, that tribe would also not be empowered to intervene. *See* 25 U.S.C. §§ 1903(5), 1911(c); *see also In re B.R.*, 97 Cal.Rptr.3d at 894.

Simply stated, once the tribes responded as they did here, additional notice would only have been required if the department acquired new information about A.R.Y.-M.'s heritage that would have assisted a tribe in making eligibility determinations. Because mother did not provide such information, we conclude no additional notice was required.

The judgment is affirmed.

Chief Judge DAVIDSON and Judge ROTHENBERG, concur.