Filed 11/17/15  In re K.B. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re K.B. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B263822 (Super. Ct. Nos. 1435820, 1435821) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD PROTECTIVE SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.T.,<br><br>    Defendant and Appellant. | |

S.T. (mother) appeals the juvenile court's order terminating parental rights and selecting adoption as the permanent plan for her minor children K.B. and B.B. (Welf. & Inst. Code,[1] § 366.26.)  Mother contends the court failed to comply with the notice requirements of the Indian Child Welfare Act (ICWA ), (25 U.S.C. § 1901 et seq.).  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

BACKGROUND

Because the sole issue on appeal concerns ICWA notice, we need not discuss at length the factual, procedural and legal grounds supporting the court's orders terminating mother's parental rights. Instead, we concentrate on the facts relating to compliance with ICWA.

In August 2013, Santa Barbara County Child Welfare Services (CWS) filed a section 300 petition as to then-four-year-old K.B. and three-year-old B.B. alleging, among other things, that mother was abusing drugs and had been arrested for willful cruelty to a child. The whereabouts of the children's father, R.B., Jr., (father)[2] were unknown.

Father did not appear at the detention hearing. Mother told CWS she had no Indian heritage and that she did not believe father had any such heritage. On September 17, 2013, the social worker spoke to father by telephone. Father said that although he and mother were never married, he was present when both children were born and had signed declarations of paternity. Two days later, the social worker emailed father to inquire about possible Indian heritage. Father replied that he believed he had five percent Cherokee Indian heritage and gave the name and date of birth of his mother, Shawn M. (the paternal grandmother), and the name and month and year of birth of his biological father, Richard B., Sr. (the paternal grandfather). Father also stated that his grandparents' names were Harold and Nora Tronstad and Jessie and Emma Roberts.

Father appeared at the jurisdictional hearing and completed a Parental Notification of Indian Status (ICWA-20) indicating possible Indian heritage through the paternal grandfather. Following the jurisdiction hearing, father stated his belief that his Cherokee heritage was through the paternal great-grandfather. Father, however, did not have any relationship with the paternal grandfather, had not seen him since father was three years old, and had no knowledge of his whereabouts. The paternal grandmother

_____

[2] Father is not a party to this appeal.

told the social worker that the paternal grandfather had Cherokee heritage and stated her belief that father "might have about 10% to 20% of Cherokee Indian." She did not, however, have any additional information to support this belief.

On October 22, 2013, CWS sent ICWA notice to the three federally recognized Cherokee tribes (the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians), the Bureau of Indian Affairs (BIA), and the Secretary of the Interior. The notice included information only about mother and father. Return receipts were subsequently filed with the court.

At the disposition hearing, the court ordered that K.B. and B.B. continue to be detained and ordered CWS to provide six months of reunification services to both parents. At the six-month review hearing, an additional six months of services were ordered and the matter was set for an ICWA review hearing on May 15, 2014. In its report for that hearing, CWS indicated the Cherokee Nation of Oklahoma had responded that it could not make the requisite determination based on the evidence presented and had requested the names and dates of birth of the paternal grandparents and great-grandparents through whom father claimed to have Cherokee heritage. The other tribes had responded that neither child qualified as Indian Children based on the information provided. Pursuant to CWS's request, the matter was continued until August 14, 2014.

On June 20, 2014, CWS again contacted the paternal grandmother to see if she could provide additional information about the paternal grandfather and his ancestors. For the first time, the paternal grandmother stated that *she* had Cherokee heritage through *her* father, Coy Roberts (the paternal great-grandfather). When CWS spoke to the paternal great-grandfather, however, he stated that he had *Chickasaw* heritage through *his* father, Jessie Lee Roberts (the paternal great-great-grandfather), and his father's mother (the paternal great-great-great-grandmother), whom he identified simply by the first name Daliah. He identified his wife or ex-wife (the paternal great-grandmother) as Jean Trostad, and said she had no Indian heritage.

3

On June 23, 2014, CWS mailed a second ICWA notice to the three Cherokee tribes, the Chickasaw Nation, the BIA, and the Secretary of the Interior. The notice included mother and father's names, current and former addresses, and dates of birth; the paternal grandmother's name (Shawn M.), address, and date and place of birth; the paternal grandfather's name (Richard Conrad B., AKA Conrad B.); the paternal great-grandfather's name (Coy Roberts), address, and date and place of birth; the paternal great-grandmother's name (Jean Trostad), with an indication that she had no tribal affiliation; the names, dates and places of birth and dates of death of the paternal great-great-grandfather (Jessie Lee Roberts) and the paternal great-great-grandmother (Emma Violet Roberts); and the first name of the paternal great-great-great-grandmother (Daliah), who was identified as being born on "Chicksaw Reservation."

In their responses, each tribe declined to intervene and stated that K.B. and B.B. were neither members nor eligible to become members of the tribe based on the information provided in the second notice. On August 14, 2014, the court found that notice had been properly given and that the ICWA did not apply to either child. On March 5, 2015, parental rights to the children were terminated and the matter was set for a section 366.36 hearing.

                                    DISCUSSION

Mother contends that the order terminating parental rights must be reversed because the court failed to comply with the ICWA notice requirements. We disagree.

The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. § 1901 et seq.) "The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource. [Citation.]" (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469.) The juvenile court and social services agencies have a duty to inquire at the outset of the proceedings whether a child subject thereto is, or may be, an Indian child. (*Id.* at p. 470.)

4

The duty to provide notice under the ICWA arises when "the court knows or has reason to know that an Indian child is involved. . . ." (25 U.S.C. § 1912(a).) An "Indian child" is one who is either a "member of an Indian tribe or . . . eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (*Id.* at § 1903(4).) "The notice . . . must contain enough information to be meaningful. [Citation.] The notice must include: if known, (1) the Indian child's name, birthplace, and birth date; (2) the name of the tribe in which the Indian child is enrolled or may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great grandparents, and other identifying information; and (4) a copy of the dependency petition. [Citation.]" (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703.) "It is essential to provide the Indian tribe with all available information about the child's ancestors, especially the one with the alleged Indian heritage. [Citation.]" (*Ibid.*; *In re C.D.* (2003) 110 Cal.App.4th 214, 224-225.)

We review compliance with the ICWA under the harmless error standard. (*In re E.W.* (2009) 170 Cal.App.4th 396, 402-403.) Notice is sufficient if there was substantial compliance with the applicable provisions of the ICWA. (*In re Christopher I.* (2003) 106 Cal.App.4th 533, 566.) "'[T]echnical compliance with the [ICWA's] notice requirements may not be required where there has been substantial compliance.' [Citation.]" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1531.) "The purpose of the ICWA notice provisions is to enable the tribe or the [Bureau of Indian Affairs] to investigate and determine whether the child is in fact an Indian child. [Citation.] Notice given under ICWA must therefore contain enough information to permit the tribe to conduct a meaningful review of its records to determine the child's eligibility for membership. [Citations]" (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576.) Even if the notice was technically deficient, reversal is not required if the error was harmless. (*In re E.W.*, at pp. 402-403.)

5

Mother asserts that reversal for compliance with the ICWA is warranted here because the second notice[3] (1) did not include the name of father's stepfather, Darrin M.; (2) did not identify Harold and Jean Tronstad and Jessie and Emma Roberts as father's grandparents; and (3) did not include the paternal grandfather's month and year of birth. None of these assertions has merit.

The name of father's stepfather was not included because he is not biologically related to the children. Mother's claim that father's stepfather merely "*may not be related*" finds no support in the record.

The notice's failure to identify father's grandparents as Harold and Jean Tronstad and Jessie and Emma Roberts is of no moment because that information was apparently incorrect. Father merely claimed to have Cherokee heritage and did not specify which parents he believed was the source of that heritage. When CWS spoke to the maternal grandmother, she initially identified the paternal grandfather as the source. The maternal grandmother later claimed that she too had Cherokee heritage through *her* father, whom she identified as *Coy* Roberts (the maternal great-grandfather). When CWS spoke to the maternal great-grandfather, however, he made clear that he had *Chickasaw*, rather than Cherokee, heritage. The maternal great-grandfather went on to identify Jean *Trostad* as the maternal great-grandmother (i.e., the maternal great-grandfather's wife or ex-wife), and Jessie Roberts (the individual through whom he claimed Chickasaw heritage) as the maternal *great-great*-grandfather. The maternal great-grandfather also made clear that the maternal great-grandmother, Jean Trostad, had no Indian heritage. In light of this inherently more reliable information, it was reasonable and logical for CWS to conclude that father's recollections of his grandparents' names were simply inaccurate. Since the maternal great-grandfather unequivocally stated that his Indian heritage was Chickasaw and not Cherokee, it was also reasonable to conclude that the maternal grandmother's stated belief that she had Cherokee heritage through the maternal

---

[3] It is undisputed that the first notice was insufficient. All further references to the notice are to the second notice.

6

great-grandfather was also incorrect.  Mother offers nothing of substance to demonstrate otherwise.  In any event, the Cherokee and Chickasaw tribes received identical notices.

Although we agree (and CWS concedes) that the notice should have included the paternal grandfather's month and year of birth, the failure to include that information does not compel reversal.  Father and the paternal grandfather have the same name, and each of the three federally recognized Cherokee tribes apparently found that this information was sufficient for them to conclude that K.B. and B.B. were neither members nor eligible for membership.  (*In re Cheyanne F.*, *supra*, 164 Cal.App.4th at p. 576; 25 U.S.C. § 1903(4).)  The error was harmless.  (*In re E.W.*, *supra*, 170 Cal.App.4th at pp. 402-403.)

The judgment (order) is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.


7

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, Toni Lorien, Sr., Deputy, for Plaintiff and Respondent.