Filed 1/8/21 In re Hadi D. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re HADI D., a Person Coming Under the Juvenile Court Law. | B305087 |
| | (Los Angeles County Super. Ct. No. 19CCJP07652B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JAWHAR D., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Emma Castro, Juvenile Court Referee. Conditionally affirmed with directions.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Jawhar D., father of four-year-old Hadi D., appeals from the juvenile court's jurisdiction findings and disposition orders declaring Hadi a dependent of the court and removing him from Jawhar and Latasha B., Hadi's mother.  Jawhar contends that the Los Angeles County Department of Children and Family Services did not comply with the inquiry and notice requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law and that the juvenile court erred in finding Hadi was not an Indian child.  We conclude substantial evidence did not support the court's finding that the Department complied with ICWA.  Therefore, we conditionally affirm the juvenile court's jurisdiction findings and disposition orders and direct the juvenile court to comply with ICWA's inquiry and notice requirements.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Department Files a Petition, and Jawhar Reports He May Have Indian Ancestry*

In November 2019 the Department filed a petition under Welfare and Institutions Code section 300,[1] alleging Hadi and his half-sister Lauren,[2] of whom Jawhar is not the father, came within the jurisdiction of the juvenile court as a result of Jawhar's history of substance abuse and violent altercations with Latasha.  The Department reported that Latasha denied having any known Indian ancestry and that ICWA did not apply.  Jawhar, however, submitted a Parental Notification of Indian Status form (Judicial Council Forms, form ICWA-020) on which he stated "I may have Indian ancestry" and wrote "PGGF – registered – Herbert [S.,] deceased in 1994[,] contact PGMO: Unniebe [S.]," and included a telephone number for Unniebe.  In the space provided for "Name of tribe(s)," Jawhar wrote "Blackfoot."

At the detention hearing Jawhar confirmed he believed he may have "Blackfoot heritage" through his grandfather, who "is possibly registered."  He gave his grandfather's name as "Hebert [*sic*] [S.]," confirmed his grandfather died in 1994, and stated his (Jawhar's) mother, Unniebe, might have more information about his grandfather, including his birth date and whether he was registered with an Indian tribe.  The juvenile

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    The proceeding concerning Lauren is not relevant to this appeal.

court ordered the Department "to notice the Blackfoot tribe and the Bureau of Indian Affairs, forthwith, and to contact the paternal . . . grandmother regarding any birth date for Hebert [*sic*] [S.]." The court also stated, "As to [Hadi], based on mother and father's ICWA-020 forms, the court asks the Department to continue investigating Blackfoot heritage alleged by [Jawhar]. . . . [Latasha] claims no American Indian heritage. [Jawhar] claims American Indian heritage."

The juvenile court found that the Department made a prima facie showing that Hadi was a person described by section 300 and ordered that Hadi remain detained from Jawhar and Latasha. The minute order from the detention hearing indicated the court was "informed that there may be some Blackfoot Native American/Indian heritage in the father's background," directed the Department "to investigate said claim," and stated "[t]he Court does not have a reason to know that ICWA applies as to Mother."

B.      *The Department Investigates Jawhar's Possible Indian Ancestry*

In a jurisdiction and disposition report filed in January 2020 the Department reported it was "currently investigating possible ICWA as to the child Hadi" based on Jawhar's "report[ ] that ICWA does or may apply." The Department more fully described its investigation in a last minute information filed February 10, 2020. There it reported: "On 1/16/20 DI CSW met with [Jawhar] . . . . DI CSW inquired with [him] regarding ICWA. [He] reported he had Cherokee ancestry only through paternal grandmother's lineage. [He] provided information regarding ICWA and also referred DI CSW to Paternal

4

grandmother, Mrs. [S.,] to inquire as to ICWA ancestry. DI CSW consulted with the father, PGM Mrs. [S.], and PGA Jacqueline [S.] regarding ICWA ancestry. DI CSW obtained the following information . . . ." The information that followed was "Ancestry: Cherokee Tribe," Hadi's paternal grandmother's full name (Unniebe S.) and date and place of birth, and Hadi's paternal great-grandfather's full name (Herbert S.), date and place of birth, and month and year of death. The Department reported: "The family was not aware of any known registration to family members. At this time, DCFS has not received . . . returned certificates or letter regarding ICWA notices. [¶] The Court is respectfully referred to the attached ICWA Notices sent on 01/24/2020."

Attached to the last minute information was a copy of an ICWA notice form, Judicial Council form ICWA-030, indicating Hadi was or might be eligible for membership in the "Cherokee Tribe." The form identified Hadi's father as "Jawhar [D.]," Hadi's paternal grandmother as "Unniebe [S.]," Hadi's paternal great-grandfather as "Hubert [*sic*] [S.]," and their tribe as "Cherokee." The form included a signed certification, dated January 24, 2020, stating that the Department mailed copies of the form by registered or certified mail, with return receipts requested, to Jawhar, Latasha, the Bureau of Indian Affairs, the Secretary of the Interior, the Cherokee Nation, the United Keetowah Band of Cherokee Indians in Oklahoma, and the Eastern Band of Cherokee. The certification page included, as part of the pre-printed form, the statement "This form and all return receipts

5

must be filed with the court." No return receipts accompanied the last minute information.[3]

C.     *The Juvenile Court Finds ICWA Does Not Apply, Sustains the Petition, and Removes Hadi*

At the February 24, 2020 jurisdiction and disposition hearing, the juvenile court sustained the petition, declared Hadi a dependent of the court, and removed him from Jawhar and Latasha. Addressing the "outstanding ICWA issue for [Jawhar]," the court stated: "So the court, on December 2, received his ICWA-020 form, and he did indicate on that form that he believed he may have Blackfoot heritage. And he gave the name of some relatives. And then subsequent to that hearing, when he was interviewed by the social worker, D.I."—counsel interrupted to direct the court to the correct report, after which the court continued—"when [Jawhar] was interviewed at the social worker's office on January 16, 2020, and the D.I. spoke with paternal grandmother . . . and paternal great-aunt . . . , regarding possible American Indian ancestry. And it appears that it was not the Blackfoot tribe, but the Cherokee tribe. And the relatives did provide further information, including birth dates and full names that they were aware of for paternal grandmother and paternal great-grandfather. And the Department then did send out ICWA notices to the Cherokee Nation on January 24, 2020, given the information that the paternal relatives had provided. So, at this time, since a month has transpired since the attached ICWA notices were sent attached to the February 10 [last minute

---

[3]     An identical copy of this notice form, also without return receipts, accompanied the jurisdiction and disposition report filed with the juvenile court in January 2020.

6

information], at this time the court is going to find that it has no reason to know that this is an Indian child as described by the Indian Child Welfare Act."  Jawhar timely appealed.

## DISCUSSION

A.    *Applicable Law*

1.    *ICWA Inquiry Requirements*

"ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)  Under ICWA and the California law implementing it, "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); see § 224.1, subd. (a) [adopting the federal definition]; *In re D.S.*, at p. 1048 ["[a]n 'Indian child' is defined in the same manner [under California law] as under federal law"].)

"ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child.  [Citation.]  Federal regulations implementing ICWA, however, require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.'  [Citation.]  The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know

7

the child is an Indian child.'" (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882-883; see 25 C.F.R. § 23.107(a).)

In addition, "ICWA provides that states may provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under' ICWA. (25 U.S.C. § 1921.) Under California law, the court and county child welfare department 'have an affirmative and continuing duty to inquire whether a child,' who is the subject of a juvenile dependency petition, 'is or may be an Indian child.' (§ 224.2, subd. (a); see . . . Cal. Rules of Court, rule 5.481(a).) The child welfare department's initial duty of inquiry includes 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' (§ 224.2, subd. (b).)" (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 883.)

"California law also requires 'further inquiry regarding the possible Indian status of the child' when 'the court, social worker, or probation officer has reason to believe that an Indian child is involved [or, under Cal. Rules of Court, rule 5.481(a)(4), "may be involved"] in a proceeding. . . . ' (§ 224.2, subd. (e).)" (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 883.) Prior to the filing of the notice of appeal in this case, the "Legislature, which added the 'reason to believe' threshold for making a further inquiry in 2018, [had] not define[d] the phrase." (*In re Austin J.*, at p. 883; see former § 224.2, subd. (e), eff. Jan. 1, 2020.) The Legislature, however, has since amended section 224.2, subdivision (e), effective September 18, 2020, to provide a definition. (Stats. 2020, ch. 104, § 15, eff. Sept. 18, 2020.) As amended, the

statute now provides: "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know [that a child is an Indian child] enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1).) We identify those grounds below, in discussing ICWA's notice requirement.

Under both the amended version of the statute and the version in effect prior to the filing of the notice of appeal in this case, "[w]hen that ['reason to believe'] threshold is reached, the requisite 'further inquiry' 'includes: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.'" (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 883; see § 224.2, subd. (e)(2)(A)-(C); former § 224.2, subd. (e)(1)-(3), eff. Jan. 1, 2020.) Both versions also provide that "[c]ontact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under" ICWA and "shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C); former § 224.2, subd. (e)(3),

9

eff. Jan. 1, 2020.)  Notably, "[t]he sharing of information with tribes at this inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know'—rather than a 'reason to believe'—that the child is an Indian child."  (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1049.)

### 2.    *ICWA Notice Requirements*

"In addition to the inquiry that is required in every dependency case from the outset and the 'further inquiry' required under California law when there is a 'reason to believe' an Indian child is [or may be] involved, a third step—notice to Indian tribes—is required under ICWA and California law if and when 'the court knows or has reason to know that an Indian child is involved.'"  (*In re Austin J.*, *supra*, 47 Cal.App.5th at pp. 883-884; see 25 U.S.C. § 1912(a); § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(b)(1); see also *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050 ["If the inquiry establishes a reason to know an Indian child is involved, notice must be provided to the pertinent tribes."].)

A "'reason to know' exists under any of the following circumstances:  '(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;]  [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;]  [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;]  [¶] (4) The child who is the

10

subject of the proceeding gives the court reason to know [he or she] is an Indian child[;]  [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;]  [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe.' (§ 224.2, subd. (d).)" (*In re D.S.*, *supra*, 46 Cal.App.5th at pp. 1049-1050.)

Notice to a tribe "must include enough information for the tribe to 'conduct a meaningful review of its records to determine the child's eligibility for membership.'" (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050; see *In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576 ["The purpose of the ICWA notice provisions is to enable the tribe or the [Bureau of Indian Affairs] to investigate and determine whether the child is in fact an Indian child."].)  This includes providing "identifying information for the child's biological parents, grandparents, and great-grandparents, to the extent known." (*In re D.S.*, at p. 1050; see § 224.3, subd. (a)(5)(C).)  "A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe . . . shall be conclusive." (§ 224.2, subd. (h).)

To summarize:  An initial "duty of inquiry applies to every 'child for whom a petition under Section 300, 601, or 602 may be or has been filed' (§ 224.2, subd. (a))," the "duty of further inquiry applies when there is a 'reason to believe that an Indian child is involved [or, under Cal. Rules of Court, rule 5.481(a)(4), "may be involved"] in a proceeding' (§ 224.2, subd. (e))," and "the duty to provide notice to Indian tribes applies only when one knows or has a 'reason to know . . . an Indian child is involved.'" (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 884.)

11

B. *Standard of Review*

Where, as here, the juvenile court finds ICWA does not apply to a child,[4] "[t]he finding implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 885; see *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050 ["The juvenile court may . . . make a finding that ICWA does *not* apply because the Agency's further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered."].) "We review a court's ICWA findings for substantial evidence. [Citations.] 'We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.'" (*In re Austin J.*, at p. 885.) The appellant "'has the burden to show that the evidence was not sufficient to support the findings and orders.'" (*Ibid.*)

C. *Substantial Evidence Did Not Support the Juvenile Court's ICWA Finding*

Jawhar contends that, in several respects, the "Department failed to make ICWA-compliant inquiry and notice," that "the court failed to carry out its *sua sponte* duty to ensure compliance with those requirements," and that, "[a]s a result, the court failed to make a valid, informed ICWA finding regarding Hadi's case."

---

[4] Like the Department, we construe the juvenile court's finding it had no reason to know Hadi is an Indian child as a finding ICWA did not apply. (See *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050.)

Although most of Jawhar's arguments lack merit, we agree the juvenile court did not make a properly informed ICWA finding.

As a threshold matter, even under the law as it existed prior to the most recent amendment to section 224.2, Jawhar's claim of possible Indian ancestry through his grandfather gave the juvenile court and the Department reason to believe an Indian child is, or at least "may be," involved in this proceeding, which triggered the duty of further inquiry. (Cal. Rules of Court, rule 5.481(a)(4); see former § 224.2, subd. (e), eff. Jan. 1, 2020; *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052 [aunt's statement of possible Indian ancestry established a reason to believe the child was an Indian child and triggered a duty of further inquiry]; *In re A.M.* (2020) 47 Cal.App.5th 303, 322 [same for mother's statement of possible Indian ancestry]; but see *In re Austin J.*, *supra*, 47 Cal.App.5th at p. 889 [statements of possible Indian ancestry by the child's mother and aunt did not trigger a duty of further inquiry because "Indian ancestry, without more, does not provide a reason to believe that a child is" an Indian child].) Indeed, the juvenile court found this to be the case, as implied by its order at the detention hearing that the Department further investigate Jawhar's claim, an order to which the Department did not object in the juvenile court and which it does not challenge on appeal.

But Jawhar's first complaint about this further inquiry— that the juvenile court "improperly instructed the Department to limit its inquiry to the birth date for the great-grandfather"—is not well taken. The court did instruct the Department to contact Jawhar's mother regarding a birth date for Jawhar's grandfather, but it did not instruct the Department to limit its inquiry to that information. Rather, the court instructed the Department to

13

continue investigating Jawhar's claim of Blackfoot ancestry generally.  And the record reflects the Department did so.

Jawhar next suggests the Department's further inquiry was deficient because, when interviewing Jawhar, Unniebe, and Jacqueline, the Department did not ask for "contact information about other paternal extended family members in order to make additional ICWA inquiry."  Jawhar, however, has not shown there was any reason to contact other extended members of his family.  He had identified one possible Indian ancestor (his grandfather) and one person (his mother) with information about that ancestor.  He also stated his only possible Indian ancestry was through his mother's family.  The Department interviewed his mother (and his aunt) and obtained the information it sought.  No one identified any other possible Indian ancestor in Jawhar's family.  The Department therefore had no obligation to inquire of other extended paternal family members.  (See *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1053 [even if the child's great-grandmother was a person reasonably expected to have information regarding the child's Indian status, the Department could reasonably conclude from its contact with the child's aunt "that no further inquiry was needed because there was no further information of value to obtain from this third party"]; see also *In re A.M.*, *supra*, 47 Cal.App.5th at p. 323 ["ICWA does not obligate the court or [the Department] 'to cast about' for investigative leads."].)

Jawhar also argues the Department's inquiry was deficient because, when interviewing him, Unniebe, and Jacqueline, it did not try to "clarify whether the paternal family had any heritage in the Blackfoot tribe and, if not, to clarify the discrepancy between Jawhar's initial claim of ancestry in the Blackfoot tribe and the paternal grandmother's claim of ancestry in the

14

Cherokee tribe." But the record reflects the Department asked Jawhar, Unniebe, and Jacqueline "regarding ICWA ancestry" generally, and the answer was they might have Cherokee ancestry. This supports the juvenile court's apparent, reasonable conclusions that Jawhar was mistaken when he initially reported possible Blackfoot ancestry through his grandfather and that the relevant tribe was Cherokee.

Jawhar also maintains the Department did not "make ICWA-compliant inquiry regarding [his] claim" of possible Indian ancestry because there is no evidence "the Department made any inquiry of Latasha regarding the personal information for the maternal extended family members." Hadi's possible Indian ancestry, however, was limited to Jawhar's family. Nothing in the record suggests there was any reason to believe Hadi is or may be an Indian child through Latasha's family. The Department had no duty to inquire further of Latasha's extended family members. (See *In re Austin J.*, *supra*, 47 Cal.App.5th at p. 888 [where the child's mother and maternal aunt stated they had possible Indian ancestry and the father stated he had none, "there was no duty to make a 'further inquiry' as to his side of the family"].)

Finally, in his one argument that has some merit, Jawhar contends the juvenile court erred in finding ICWA did not apply based on the copies of the ICWA-030 notice form the Department filed with the court. He argues the forms were not substantial evidence to support the court's finding the Department fulfilled its duty of inquiry for two reasons. First, he argues, the form contained significant errors and omissions that denied the tribes a meaningful opportunity to evaluate whether Hadi is an Indian child. These errors and omissions included not providing

15

Jawhar's full name, incorrectly stating Jawhar's grandfather's name was "Hubert" (rather than "Herbert"), and incorrectly indicating it was "[u]nknown" whether Hadi's birth certificate named Jawhar as father, whether Jawhar acknowledged parentage of Hadi, and whether there had been a judicial declaration of parentage. Second, Jawhar points out, the Department did not include any return receipts or responses from the intended recipients of the notice form.

The Department does not dispute that the purported errors and omissions in the notice form denied the tribes a meaningful opportunity to evaluate Hadi's status as an Indian child. Nor does it explain why the record contains no return receipts (or responses), even though the Department certified it requested return receipts when it mailed the form a month prior to the jurisdiction and disposition hearing. Instead, the Department contends "any alleged deficiencies with respect to the notice [it] sent were harmless" because "ICWA notice was not required."

True, formal ICWA notice was not (yet) required, because the juvenile court and the Department did not (yet) have reason to know Hadi was an Indian child.[5] (See *In re M.W.* (2020) 49 Cal.App.5th 1034, 1044 [based on the father's statements of possible Indian ancestry, "there was at best a *reason to believe*

_____

[5] Although the juvenile court, at the detention hearing, ordered the Department "to notice" the Bureau of Indian Affairs and the tribe Jawhar had identified, it may be that the court was not ordering formal ICWA notice based on having a reason to know Hadi was an Indian child. (See *In re A.M.*, *supra*, 47 Cal.App.5th at p. 315 ["There are two separate ICWA requirements which are sometimes conflated: the obligation to give notice to a tribe, and the obligation to conduct further inquiry to determine whether notice is necessary."].)

the minor may be an Indian child, . . . which required the court and the Department to make further inquiry as soon as practicable"]; *In re Austin J.*, *supra*, 47 Cal.App.5th at p. 885 ["tribal ancestry is not among the criteria for having a reason to know the child is an Indian child"].)  The duty of further inquiry, however, required the Department to contact the relevant tribes. (See § 224.2, subd. (e)(2)(C); former § 224.2, subd. (e)(3), eff. Jan. 1, 2020.)  And although that duty of inquiry did "not require that any extensive or particular formal documentation of ICWA inquiry be provided to the tribe" (*In re M.W.*, at p. 1046), it did require the Department to share "information identified by the tribe as necessary for the tribe to make a membership or eligibility determination" (§ 224.2, subd. (e)(2)(C); former § 224.2, subd. (e)(3), eff. Jan. 1, 2020; see *In re M.W.*, at p. 1046).

The only evidence in the record reflecting that the Department contacted and shared information with the tribes is a certification the Department mailed the tribes a notice form with erroneous and incomplete information.  There is no evidence the tribes received the form.  Nor is there evidence the information in the form met the tribes' needs for determining Hadi's, Jawhar's, or even Jawhar's grandfather's membership or eligibility for membership, a particularly troubling omission given the form, for example, misstated Jawhar's grandfather's name.  Therefore, substantial evidence did not support the juvenile court's implied finding the Department complied with its duty of further inquiry.  We must remand for the Department to comply with that duty by presenting the juvenile court with evidence the Department has contacted and shared the requisite information with the relevant tribes and for the juvenile court to make a properly informed finding on whether ICWA applies.

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders are conditionally affirmed, and the juvenile court is directed to comply fully with the inquiry and notice requirements of ICWA and related California law. The current inquiry and notice requirements, to the extent they differ from the requirements previously applicable in this case, will apply. The juvenile court is to determine whether the requirements have been satisfied and whether Hadi is an Indian child. If the court finds Hadi is an Indian child, it is to conduct new hearings in compliance with ICWA and related California law.

SEGAL, J.

We concur:

PERLUSS, P. J.            DILLON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.