Filed 4/28/21  In re C.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.S. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E076100 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ1900266) |
| v. | OPINION |
| C.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Susanne S. Cho, Judge.

Reversed with directions.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and

Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Anna M. Marchand, Julie

Koons Jarvi, Deputy County Counsels, for Plaintiff and Respondent.

In this appeal following the termination of parental rights, the mother contends only that the social services agency failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA). We agree and conditionally reverse.[1]

## I. BACKGROUND

In July 2019, plaintiff and respondent Riverside County Department of Public Social Services (DPSS) filed a petition pursuant to section 300, subdivision (b)(1) for two-year-old C.S. and her one-year-old brother M.S. Defendant and appellant C.H. (Mother) informed the juvenile court on a Form ICWA-020 (Parental Notification of Indian Status) that she had no Indian ancestry. The children's father (Father), who is not a party to this appeal, indicated on his Form ICWA-020 that he is "or may be a member of, or eligible for membership in," the Blackfeet Tribe.[2]

Father made the contention about his tribal membership status on July 25, which is when the juvenile court held its first hearing. At that hearing, the court noted Father's possible Indian heritage and set a contested detention hearing for July 30. No additional information about Indian ancestry was provided before the July 30 hearing. At that hearing, the court stated: "The Indian Child Welfare Act does not apply in this case.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. In addition, because ICWA uses the term "Indian," for consistency, we do the same.

[2] The juvenile court ultimately terminated Mother and Father's parental rights over the children in November 2020. Because Mother raises only ICWA compliance in her appeal of that order, we need not discuss the circumstances leading to the children's removal or their parents' reunification efforts.

[DPSS] has conducted a sufficient inquiry. The parents have filled out the ICWA-020 form. Children are not Native Indian children."

In August, DPSS sent ICWA notices to the Blackfeet Tribe as well as to the Secretary of the Interior, the Sacramento Area Director of the Bureau of Indian Affairs, and Mother and Father. The notice indicated that Father had been interviewed on July 30, the same day as the hearing. The notice contained full biographical information about Father's parents and sparse information about three of Father's grandparents. The notice listed Father's father, who is deceased, as a member of the Blackfeet Tribe. The notice also listed one of Father's grandmothers as a member of the Blackfeet Tribe, but no other information about that grandmother was provided other than a name and birthplace. No information was included about one of Father's grandfathers.[3]

For the jurisdiction and disposition report, Father reported that he has no Indian ancestry. The juvenile court found that ICWA did not apply, that the allegations in the petition were true, and that the children's placement with maternal grandparents was appropriate. Less than two weeks after the jurisdiction and disposition report, the children were placed with their paternal aunt and uncle, as the maternal grandparents were unable to have the children reside in their senior living community.

A February 2020 six-month review report stated that Father denied having Indian ancestry and that the children's paternal aunt denied Indian ancestry "on behalf of"

---

[3] The notice listed Father's mother, as well as one of Father's grandmothers, as members of the Teschachuan Tribe, which the parties agree is not federally recognized.

Father.  The juvenile court terminated reunification services for Mother and Father in May 2020 and set the matter for a hearing under section 366.26.

In a September 2020 section 366.26 report, DPSS stated that it never received a response from the Blackfeet Tribe.  The report also stated that DPSS sent notice of the section 366.26 hearing to the tribe and that DPSS tried to contact the tribe by telephone.[4] The report stated that ICWA "may" apply, but the court made no findings regarding ICWA at the hearing.

## II.  DISCUSSION

Mother contends that DPSS and the juvenile court failed to comply with the duty of further inquiry under ICWA, and that the court's (implied) finding at the termination of parental rights proceeding that ICWA did not apply lacked substantial evidence.  We agree.

ICWA requires notice to Indian tribes "in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court [or social worker] knows or has reason to know that an Indian child is involved.'"  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8, quoting 25 U.S.C. § 1912(a); accord § 224.3, subd. (a).)  An "'Indian child'" is any unmarried person under 18 who "is either (a) a member of an

---

[4] The social worker stated in the report that "on September 9, 2020, I placed a call to Mary Cooper, ICWA Inquiry Technician with the Blackfeet Tribe of Montana to inquire as to the status of this family and our prior noticing efforts.  At that time, I was advised that Ms. Cooper does not have a voicemail and a message could not be left for her.  I was further advised to call back until I reach her."  The report did not describe any additional efforts to reach the tribe.

4

Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); accord § 224.1, subd. (b).)

DPSS and the juvenile court have an "affirmative and continuing duty to inquire" whether the child in the dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) When DPSS takes the child into temporary custody, its duty to inquire includes asking "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child," and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b).) In addition, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).)

When the initial inquiry gives the juvenile court or social worker "reason to believe that an Indian child is involved," the court and social worker must conduct further inquiry to "determine whether there is reason to know a child is an Indian child." (§ 224.2, subd. (e) 1st par., (e)(2).) There is reason to believe an Indian child is involved if the court or the social worker "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)

Further inquiry includes, among other things, interviewing the parents and extended family members to gather the information required for the ICWA notice. (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5).) To the extent known, the notice must

5

include the names, birthdates, current and former addresses, places of birth and death, and any tribal enrollment information for the parents, grandparents, and great-grandparents. (§ 224.3, subd. (a)(5)(C).) DPSS "must make a meaningful effort to contact specified family members who might have pertinent information." (*In re K.R.* (2018) 20 Cal.App.5th 701, 707.)

Here, Father's statement on his Form ICWA-020 that he is or may be a member of (or eligible for membership in) the Blackfeet Tribe triggered the duty of further inquiry. DPSS was thus required to make a meaningful effort to interview extended family members who might have pertinent information before deciding whether to send notice. However, there is no indication that DPSS attempted to interview extended family members for such information. Specifically, although the children were placed with their paternal aunt and uncle, there is no indication in the record that DPSS interviewed those family members for names, birthdates, addresses and other biographical information for the paternal grandparents and great-grandparents. The record only shows that DPSS asked the paternal aunt whether Father had Indian ancestry, which she denied.

In addition to DPSS's obligation to conduct further ICWA inquiry, the court had "a responsibility to ascertain that the agency ha[d] conducted an adequate investigation." (*In re K.R.*, *supra*, 20 Cal.App.5th at p. 709.) The court could not assume that DPSS had fully complied with its obligations merely because the agency had obtained some of the relevant information and noticed the tribes. (*Ibid.*) Yet there is no evidence in the record

that the court asked DPSS about its efforts to contact paternal family members who might have information about the family's Blackfeet ancestry.

Accordingly, DPSS and the court failed to perform their duties of further inquiry. The termination of parental rights at the section 366.26 hearing implied that ICWA did not apply, which in turn implied that the duty of further inquiry had been satisfied. (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 887.) But the record did not contain substantial evidence to support a finding that the duty of further inquiry had been satisfied, in the absence of information about DPSS's and the court's efforts to conduct such an inquiry. (§ 224.2, subd. (i)(2) [ICWA finding "subject to reversal based on sufficiency of the evidence"]; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467 [ICWA findings reviewed for substantial evidence].) This is especially so given that the report DPSS prepared for the section 366.26 hearing stated that ICWA may apply.

Father's later denial that he had Indian ancestry, after first claiming Indian ancestry on the Form ICWA-020, does not constitute substantial evidence in support of the juvenile court's finding. As of the July 30, 2019 hearing, the record indicated only that Father had indicated possible membership in the Blackfeet Tribe, yet the court nevertheless found at the July 30 hearing that ICWA did not apply. Without more in the record to indicate why Father denied having Indian ancestry from that point on, it is reasonable to conclude that Father was simply basing his later answers on the court's ruling, which itself was erroneous given the evidence. (Cf. *In re C.A.* (2018) 24 Cal.App.5th 511, 519 [duty of inquiry satisfied because although father initially indicated

7

he may have Indian heritage, he later explained "that he had learned new information about his parents and did not have any" Indian heritage].)

The ICWA error was not harmless and therefore requires a conditional reversal. (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576-577 [errors or omissions in an ICWA notice are "generally prejudicial" but may be deemed harmless in some circumstances].)  The notice contained no addresses or birthdates for three of Father's grandparents and no information whatsoever about the fourth grandparent.  Although the notice indicated that Father's father, a member of the Blackfeet Tribe, is deceased and thus unable to provide additional information, it does not list Father's grandmother, who is also a member of the Blackfeet Tribe, as deceased.  Nor can we ignore the possibility that other members of Father's family, such as the children's paternal aunt and uncle, could have provided some of the missing biographical information about Father's grandparents had they been interviewed.

Accordingly, we conclude that the juvenile court and DPSS did not comply with the duty of further inquiry under ICWA and related state law.  We must conditionally reverse the order terminating parental rights and remand the matter for the court and DPSS to satisfy that duty and for DPSS to notice the pertinent tribes, if required.  (*In re K.R.*, *supra*, 20 Cal.App.5th at p. 709.)

## III.  DISPOSITION

The order terminating parental rights is conditionally reversed.  On remand, the juvenile court shall ensure that DPSS complies with the duty to further investigate

Father's claim of Blackfeet ancestry under section 224.2, subdivision (e) and, if applicable, the duty to provide notice to the pertinent tribes under section 224.3.  If the court determines that ICWA does not apply, then the court shall reinstate the order terminating parental rights.  If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAPHAEL_____
J.


We concur:

MILLER_____
          Acting P. J.

SLOUGH_____
                    J.