Filed 7/29/21  In re J.G. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. | H048894 (Santa Cruz County Super. Ct. No. 20JU00123) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. N.L., Defendant and Appellant. | |

In January 2019, the Santa Cruz County Human Services Department (Department) filed a petition (first petition) under Welfare and Institutions Code section 300, subdivision (b)(1)[1] relative to a newborn boy, J.G. (the minor).  N.L. (mother) and L.G. (father) are the minor's parents.  (Mother and father are hereafter collectively referred to as parents.)  The parents received family maintenance services and the court terminated dependency jurisdiction in or about August 2019.  The Department had investigated mother's claim that she might have affiliation with a

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

Cherokee tribe and concluded that the minor was neither a member nor eligible for membership, and that therefore the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; hereafter, the ICWA or the Act) did not apply.

The Department filed on May 7, 2020, a new petition (second petition) under section 300, subdivision (b)(1) to declare the minor a dependent child due to the parents' ongoing substance abuse. This followed after drug paraphernalia and methamphetamine residue were found in the minor's diaper bag on May 5. The minor was placed into protective custody. The juvenile court ordered the minor detained on May 14, 2020. At that detention hearing, the court found, based upon information from the prior proceeding involving the first petition, that the ICWA did not apply. In June 2020, the juvenile court sustained the second petition, declared the minor a dependent child, removed him from the parents' custody, and ordered that the parents receive reunification services. On January 12, 2021, at the six-month review hearing pursuant to section 366.21, subdivision (e), the court ordered that mother's reunification services be terminated and that services continue for father.

On appeal, mother contends that the order after the six-month review hearing must be remanded to the juvenile court because the Department and the juvenile court failed to comply with the inquiry and notice requirements of the ICWA. Mother notes that, if upon proper inquiry and notice and a finding that the ICWA does not apply, the juvenile court should reinstate its prior orders. We will reverse the order with directions that the Department conduct and document in its reports its further inquiry efforts as required under the ICWA, and for the juvenile court to make current findings concerning the Department's compliance with such further inquiry requirements and concerning the Act's applicability to these proceedings.

## I.    FACTS AND PROCEDURAL HISTORY

### A.    First Petition Proceedings

The Department received a referral on January 10, 2019 involving the newborn minor.  Both mother and infant tested positive for methadone.  It was also reported that mother had received inconsistent prenatal care, and that she had used heroin as recently as September 2018.  The Department filed the first petition on behalf of the minor under section 300, subdivision (b)(1) on January 28, 2019.  It was alleged in the first petition that mother had a long history of substance abuse, including use of methamphetamine, and that mother's recent recovery and long-term substance abuse placed the minor at substantial risk of serious physical harm.  The Department alleged further that father also had a substance abuse history and was unwilling or unable to protect the minor.

On February 27, 2019, father was declared the presumed father of the minor.

Father had reported no known Indian ancestry.  Mother had claimed Cherokee ancestry.  The Department had sent notice to three Cherokee tribes, the Cherokee Nation, the Eastern Band of Cherokee tribes, and the United Keetoowah Band of Cherokee Indians.  All three tribes indicated that the minor was neither a member nor eligible for membership, and the Department concluded in its report that the ICWA did not apply.[2]

The parents received family maintenance services between March and August 2019, as well as court-ordered services including counseling and substances abuse services.  The first petition dependency proceeding was dismissed in or about August 2019.

### B.    Second Petition Proceedings

On May 7, 2020, the Department filed a second petition under section 300, subdivision (b)(1) to declare the minor a dependent child.  The Department alleged in the

---

**2** The record does not disclose whether the juvenile court made a specific finding in the first petition proceedings that the ICWA did not apply.

second petition that the minor was at substantial risk of physical harm due to the parents' ongoing substance abuse. Mother had been using methamphetamine and heroin since she was 20 years old, and she had been involved in drug-related arrests since 2014.[3] Father started using methamphetamine when he was in his early 20's. Both parents had previously received court-ordered services to address their substance abuse issues.

It was alleged that on April 5, 2020, law enforcement had observed mother and a friend using syringes. The friend acknowledged that they had injected heroin; the friend also reported that heroin, methamphetamine, and drug paraphernalia were located in mother's car. The Department alleged further that on May 5, 2020, law enforcement found syringes and methamphetamine residue in the minor's diaper bag, and uncapped syringes and drug paraphernalia out in the open in the residence. At the time of this discovery, father—who had an imitation firearm and drug paraphernalia in his backpack—reported to law enforcement that on that day, mother, who was under the influence, had kicked the door, shattered a window, and left the residence. Father, who appeared to be under the influence, reported to law enforcement that he had relapsed and had last used methamphetamine several days before May 5. The minor was placed into protective custody.

In the second petition, the Department stated that the minor had no known Indian ancestry. It explained that in the prior proceedings involving the first petition, mother advised that the minor might have Cherokee ancestry. The Department alleged that it had contacted three Cherokee tribes, and each had responded that the minor was not a member or eligible for membership.

On May 12, 2020, the juvenile court ordered the minor detained with temporary placement vested with the Department. Mother was not present at the hearing. Father had signed a Judicial Council form (ICWA -020; hereafter ICWA-020 form), filed

---

[3] Both parents were in their early 30's at the time the second petition was filed.

May 11, 2020, indicating that he had no Indian heritage, and he stated that he had previously filed a similar form with the court. Father indicated to the court that there had been no new information concerning Indian heritage since the court's ICWA finding in the prior proceeding, and based upon this statement, the court found, as to father, that the ICWA did not apply. The court ordered that father receive supervised visitation. At the request of mother's counsel, the court continued the hearing to May 14.

Mother signed an ICWA-020 form, filed May 14, 2020, in which she did not check any of the seven boxes that would disclose the potential applicability of the ICWA; one of those unchecked boxes concerned a claim that she was a member or eligible for membership in an Indian tribe. Mother also did not check the eighth box indicating "[n]one of the above [seven boxes] apply." Mother also stated in the ICWA-020 form that she had previously filed with the court an ICWA-020 form. As recited in the court's minutes of the continued detention hearing on May 14, mother advised the court that she had no new information concerning Indian heritage since the court had made a prior ICWA finding in the proceeding on the first petition.[4] The court, based upon mother's indication that she did not have Indian heritage, found that the minor was not an Indian child and the ICWA did not, as to mother, apply. The juvenile court confirmed its prior detention order, and it ordered that mother receive supervised visitation.

In its May 29, 2020 report in connection with the jurisdiction/disposition hearing, the Department stated that the ICWA did not apply. The Department explained that father and mother had advised on May 12 and May 14, 2020, respectively, that they had no Indian heritage. It explained that the court therefore found on May 14 that "[the minor] is not an Indian child and that [the] ICWA did not apply in this matter."

At the jurisdiction/disposition hearing on June 9, 2020, the juvenile court sustained the allegations of the second petition, and it found the minor to be a dependent

---

[4] See footnote 2, *ante*.

5

child.  The court ordered out-of-home placement, and supervised visitation and reunification services for the parents.  The juvenile court made no ICWA findings at the jurisdiction/disposition hearing.

In an ICWA report filed on August 26, 2020, the Department advised that the minor's maternal grandmother had stated that the minor might have Algonquian as well as Cherokee heritage.  The Department therefore provided notice to the Shinnecock Indian Nation, the Eastern Band of Cherokee Indians, the Cherokee Nation, and the United Keetoowah Band of Cherokee Indians.  The Department requested that the juvenile court find that the Department had given timely notice.  The court made this finding of timely notice at a review hearing on September 1, 2020.

The Department advised in a supplemental ICWA report filed on November 23, 2020, that, after sending notice, it had received responses from the Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee Indians, both indicating that the minor was neither a member nor eligible for membership.  The Department had received no response from either the Shinnecock Indian Nation or the Cherokee Nation.

In its report filed December 11, 2020, in connection with the six-month review hearing, the Department advised that mother had not been engaged in substance use disorder services (SUDS), and she had not returned calls from a SUDS specialist regarding an inpatient opportunity available to mother.  Mother was receiving counseling through a Sienna House therapist, who indicated to the Department that mother was "inconsistent in her participation and [the therapist] continues to be worried that [mother 'may not be ready or able to parent [the minor.]' " It was reported that mother had been inconsistent in appearing for visits with the minor, and she had not been willing to participate in substance use testing.  The Department recommended that reunification services continue for father and that mother's services be terminated.  The Department's report contained no detailed discussion concerning the ICWA.  The sole reference was

6

that "[o]n May 14, 2020, [t]he Court found that [t]he Indian Child Welfare Act does not apply."

The juvenile court conducted a six-month review hearing on January 12, 2021. Mother did not appear at the hearing. The court denied a request for continuance by mother's counsel, finding that mother had been given proper notice. Mother's counsel advised the court that she did not have any comments to present at the hearing. Counsel stated that she had not been in communication with mother, who had not stayed in touch. Counsel advised that she therefore did not know mother's position. There was no discussion at the hearing concerning the Department's compliance with the ICWA or whether the ICWA applied to the proceedings. The juvenile court adopted the Department's recommendations, ordered that mother's reunification services be terminated and that father continue to receive services. The court made no findings or orders concerning the ICWA.

Mother filed a timely notice of appeal from the order after the six-month review hearing.

## II. DISCUSSION

### A. The ICWA

The ICWA, enacted in 1978, is a federal law, which is recognized and applied in California. (See, e.g., *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1197.) Its purpose is to protect the interests of Indian children and to promote the stability and security of Indian tribes and families. (25 U.S.C. § 1902; see, e.g., *In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 906.)

The law imposes a duty of inquiry. (*In re Andrew S.* (2016) 2 Cal.App.5th 536, 547.) Pursuant to California law, both the court and the agency "have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child" for ICWA

7

purposes. (§ 224.2, subd. (a); see also Cal. Rules of Court, rule 5.481(a);[5] *In re Isaiah W.* (2016) 1 Cal.5th 1, 9.)[6] According to the federal guidelines, the court is required to " 'make inquiries to determine if the child involved is a member of an Indian tribe or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe.' [Citation.]" (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1158, italics omitted.)

The ICWA generally requires that notice be given in instances "where the court knows or has reason to know that an Indian child is involved" in a dependency proceeding. (25 U.S.C. § 1912 (a).) State law similarly provides that "[i]f the court, a social worker, or probation officer knows or has reason to know . . . that an Indian child is involved" in the dependency proceeding, notice is required. (§ 224.3, subd. (a).)[7] It need not be a certainty that the child is an "Indian child" to require the giving of an ICWA notice. (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 471.) "Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families. Notice ensures the tribe will be afforded the opportunity to assert its rights under the Act irrespective of the position of the parents, Indian custodian or state agencies." (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.) California implements the ICWA's notice requirements through statutes and court rules. (See §§ 224-224.6, 290.1-297; rules 5.480-5.487.)

---

[5] Further rule references are to the California Rules of Court.

[6] Substantial revisions were made to the Welfare and Institutions Code in legislation that became effective January 1, 2019. (See Stats.2018, ch. 833 (A.B. 3176).) The revisions, which included a repeal and replacement of sections 224.2 and 224.3 (*ibid.*), were made "to conform California law to the requirements of the federal regulations governing proceedings covered by the ICWA." (*In re M.W.* (2020) 49 Cal.App.5th 1034, 1043.)

[7] The federal act defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C., § 1903(4); see also § 224, subd. (c).)

The notice to potentially affected tribes must include "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5)(C); see *In re Charlotte V.* (2016) 6 Cal.App.5th 51, 56.) "The purpose of the ICWA notice provisions is to enable the tribe or the [Bureau of Indian Affairs] to investigate and determine whether the child is in fact an Indian child. [Citation.] Notice given under ICWA must therefore contain enough information to permit the tribe to conduct a meaningful review of its records to determine the child's eligibility for membership. [Citations.]" (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576.)

The Court of Appeal for the Fourth District (Division 1) recently explained the distinction between cases in which there is a "reason to believe" and where there is "a reason to know" the child may be an Indian child. "Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department . . . the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' When the [Department] has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e).) The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe. . . . [¶] The sharing of information with tribes at this inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know'—

9

rather than a 'reason to believe'—that the child is an Indian child." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048-1049, fns. omitted.)

A "reason to know" that a dependent child is an Indian child exists under any of the six enumerated circumstances: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child. [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).) The less stringent "reason to believe" standard requiring further inquiry is based upon the six "reason to know" statutory circumstances: "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e).)

In "reason to know" cases, "[t]he juvenile court must determine whether proper notice was given under [the] ICWA and whether [the] ICWA applies to the proceedings." (*In re E.W.* (2009) 170 Cal.App.4th 396, 403.) "The juvenile court is not authorized to determine [the] ICWA does not apply until (1) 'proper and adequate' ICWA notice has

been given, and (2) neither a tribe nor the [Bureau of Indian Affairs] has provided a determinative response to the notice within 60 days of receiving the notice. [Citations.]" (*In re N.G.* (2018) 27 Cal.App.5th 474, 480.) "[A]ny finding of [the] ICWA's inapplicability before proper and adequate ICWA notice has been given is not conclusive and does not relieve the court of its continuing duty . . . to inquire into a child's Indian status in all dependency proceedings." (*In re Isaiah W.*, *supra*, 1 Cal.5th at p. 11.)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether [the] ICWA's requirements have been satisfied. [Citation.]" (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051, fn. omitted.)

## B. Ripeness

The Department argues that the case is not ripe for adjudication and that the appeal should therefore be dismissed. It contends that the juvenile court made a finding early in the second petition proceedings—based upon its prior finding in the proceedings involving the first petition—that the ICWA did not apply. But, the Department argues, due to later developments involving the disclosure by the maternal grandmother that the minor may have Algonquian as well as Cherokee heritage that resulted in the Department giving notice to four tribes, the issue of ICWA compliance was still outstanding as "the Juvenile Court [had] yet to make findings regarding the sufficiency of the inquiry or the applicability of the Act." The Department asserts that therefore the matter is not ripe for appellate review and should be dismissed.

Under the ripeness doctrine, a case must present a current controversy. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59.) This requirement ensures that courts decide an existing controversy, and it precludes courts from rendering advisory opinions. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170-172.) In the event a case is not ripe, it is subject to dismissal. (*In re L.B.* (2009) 173 Cal.App.4th 562, 565.)

11

The Department relies on *In M.R.* (2017) 7 Cal.App.5th 886 (*M.R.*) in support of its position that the appeal should be dismissed under the ripeness doctrine. In *M.R.*, the juvenile court determined at the dispositional hearing that the agency had initiated ICWA noticing and held that the ICWA might apply to the children. (*Id.* at p. 904.) Both parents challenged the adequacy of the agency's compliance with the ICWA notice requirements in their appeals from the dispositional findings and orders. (*Id.* at p. 903.) The appellate court in *M.R.* held that the ICWA finding at the disposition hearing was not a final ruling, the parents' claim was "simply premature," and declined to review the adequacy of the ICWA noticing which was subject to being addressed in the future by the juvenile court. (*Id.* at p. 904 & fn. 9.)

*M.R.* is distinguishable and does not support the Department's claim that the matter is not ripe for adjudication. Here, the juvenile court made specific findings at the detention hearings on May 12 and May 14, 2020, that the ICWA did not apply in this case. Thereafter, the only reference by the court to the ICWA was its finding on September 1, 2020, that the Department's notices to the four Indian tribes was timely. In December 2020, the Department's only statement concerning the ICWA in its report filed in connection with the six-month review hearing was that the juvenile court had previously found on May 14 that the ICWA did not apply. And at the January 12, 2021 six-month review hearing, there was no discussion regarding the ICWA—such as the adequacy of the Department's investigation in response to the maternal grandmother's statement that the minor may have Algonquian and Cherokee heritage, the adequacy of the notices by the Department, or the responses by the four tribes—and the court made no ICWA findings at that hearing. Thus—unlike *M.R.*, where the juvenile court had made a preliminary determination that the ICWA *might apply* to the children—here, the only conclusion by the juvenile court was its finding at the May 2020 detention hearing that the ICWA categorically *did not apply*.

12

We acknowledge that the proceeding below is ongoing, and that because the court and the Department "have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child" (§ 224.2, subd. (a)), it is conceivable that the juvenile court may, without this court's intervention, give future consideration to the Department's compliance with the ICWA and to whether the ICWA applies. Under these circumstances, however, where the record before us presents a determination by the juvenile court that the ICWA does not apply, we conclude that there is an actual and present controversy. We therefore deny the Department's request that we dismiss the appeal under the ripeness doctrine.

## C.   The Order Must Be Conditionally Reversed

Mother argues that the Department and the juvenile court failed to comply with the ICWA's inquiry and notice requirements. She contends that this error requires that the case be remanded with instructions that the juvenile court comply with the ICWA.[8] She argues, inter alia, that (1) mother's prior claim of Cherokee heritage and the maternal grandmother's claim (after the jurisdiction/disposition hearing) of Algonquian and Cherokee heritage provided the Department with a reason to believe the minor was an Indian child and triggered a duty of further inquiry; (2) it did not appear that the Department had made further inquiry concerning the maternal grandmother's claim of Algonquian and Cherokee heritage; (3) "the court had a reason to know that [the minor] was an Indian child," thereby requiring the Department to provide formal notice under the ICWA; and (4) the ICWA notices provided by the Department to the four Indian tribes did not comply with the statute because they omitted material information that was known or readily available to the Department.[9]

---

[8] Mother raises no challenges to the order aside from noncompliance with the ICWA.

[9] As we discuss, mother's argument concerning defective ICWA notice is
(continued)

13

We note preliminarily two matters. First, the juvenile court below never made a finding either that (1) there was a reason to believe or (2) there was a reason to know that the minor was an Indian child. (See § 224.3.) Second, while mother claims here that "the court had a reason to know that [the minor] was an Indian child"—and she bases her challenge to the adequacy of the Department's notices on the assertion that formal notice was required under the ICWA—the record before us does not support this assertion. As we discuss below, based upon the record before us, this is a "reason to believe" case.[10]

As we have discussed (see part B, *ante*), the only findings in the record concerning the ICWA—occurring early in the proceedings within a week after the filing of the second petition—were those made by the juvenile court at the detention hearing on May 12 and 14, 2020, that the ICWA did not apply. After the jurisdiction/disposition hearing on June 9, 2020, and on or before July 21, the Department learned from the maternal grandmother that the minor might have Algonquian as well as Cherokee heritage. This resulted in the Department sending notice to four tribes, the Shinnecock Indian Nation, the Eastern Band of Cherokee Indians, the Cherokee Nation, and the United Keetoowah Band of Cherokee Indians, on July 21, 2020. In November, the Department advised the court that (1) two of the tribes had responded by indicating that the minor was neither a member nor eligible for membership, and (2) the two other tribes had not responded. Beyond these statements, the Department provided no information between August 26, 2020 and the January 12, 2021 six-month review hearing concerning any further ICWA inquiry efforts it had made or concerning information it had received

premised on the assumption that the notices provided to the four Indian tribes provided by the Department in or about August 2020 were, in fact, formal ICWA notices based upon a "reason to know" that the minor was an Indian child. The record before us belies this assumption.

[10] It is of course true that further facts may be developed below from which it may be reasonably concluded by the juvenile court that there is no reason to believe the minor is an Indian child—or that there is a reason to know that the minor is an Indian child. We base our conclusion here solely on what is presented in the record.

from those efforts.  And other than making a finding on September 1, 2020, that the Department's notice to the four tribes on July 21 had been timely, the record does not show that the juvenile court, at any time after May 14, 2020, addressed the Department's compliance with the ICWA or whether the Act applied.

From the record before us, neither the Department nor the juvenile court satisfied its obligations of further inquiry under the ICWA.  The information of the minor's possible Algonquian and Cherokee heritage supplied to the Department by the maternal grandmother on or prior to July 21 was sufficient to provide a "reason to believe" that the minor could be an Indian child.  (§ 224.2, subd. (e); see, e.g., *In re D.S.*, *supra*, 46 Cal.App.5th at pp. 1046, 1052 [paternal aunt's statement that her great-grandmother had affiliation with Sioux and Blackfeet tribes created a "reason to believe D.S. is an Indian child and triggered a duty to conduct further inquiry"].)  The Department in its respondent's brief concedes the point, arguing that notice under section 224.3 "was not necessary on this 'reason to believe' case."  That being the case, the Department was required to further inquire as to the minor's possible Indian status.  (§ 242, subd. (e).)  "The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.  At this stage, contact with a tribe 'shall, at a minimum,' include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of ICWA notice, and 'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.'  [Citation.]"  (*In re D.S.*, *supra*, at p. 1049, fns. omitted; § 224.2, subd. (e)(2); see also rule 5.481(a)(4) [specifying same further inquiry requirements].)

Here, there is no record that the juvenile court made any findings concerning the further ICWA inquiry performed by the Department.  (See *In re D.S.*, *supra*, 46

15

Cal.App.5th at p.1054 [juvenile court, before determining that ICWA does not apply, "must find that the Agency conducted a 'proper and adequate further inquiry' and exercised 'due diligence to identify and work with' all of the pertinent tribes"].) And the record is nearly silent as to the specifics of any further inquiry conducted by the Department after it had a "reason to believe" that the minor was an Indian child. Any contact by the Department in the form of "[i]nterviewing the parents . . . and extended family members" does not appear in the record. (§ 224.2, subd. (e)(2)(A).) There is nothing provided in the Department's reports concerning the substance of any interviews it had with the maternal grandmother after she had reported initially—triggering a duty of further inquiry—that the minor might have Algonquian and Cherokee heritage. It would seem, at minimum, that the Department's report should have identified the date and substance of the further inquiry, including the maternal grandmother's explanation for her belief that the minor might have Algonquian and Cherokee heritage, and whether she was aware of other relatives or other persons who might have additional information on the subject. Additionally, the record does not show that the Department interviewed the parents or other extended family members as part of its further inquiry.

Further, the record does not show any further inquiry the Department made in "[c]ontacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership." (§ 224.2, subd. (e)(2)(B).)[11]

---

[11] The Department filed a request to augment the record, which we granted. One of the documents attached to the request is captioned "*SUPPLEMENTAL* to the ICWA Memo dated 12/01/2020." The document—which included attached certified mail cards, indicating a certified mailing on July 30, 2020, to the Bureau of Indian Affairs and a certified mailing on October 16, 2020, to the United Stated Department of Interior—was filed in the court below on May 27, 2021, nearly three months after the notice of appeal was filed in this case. The certified mail cards obviously would not have been available (continued)

16

The Department—in sending notice on July 21, 2020, to the Shinnecock Indian Nation, the Eastern Band of Cherokee Indians, the Cherokee Nation, and the United Keetoowah Band of Cherokee Indians—made further inquiry by "[c]ontacting the tribe . . . regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(C).) The Department, in demonstrating its compliance with further inquiry requirements of the ICWA, needed to show the adequacy of its contact with the tribes. For instance, the statute provides that "[c]ontact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination." (*Ibid.*) The record does not show whether the Department's notices shared such necessary information with the tribes. On appeal, mother challenges the adequacy of the information contained in the notices to the four tribes, noting that the Department omitted much material information, such as the date and place of birth of the maternal grandmother, and any information about the maternal grandfather, the maternal great-grandmother (other than name), or the maternal great-grandfather. While mother's argument here was made in the context of challenging the adequacy of the Department's notice based upon the erroneous assertion that there was a "reason to know" the minor is an Indian child, with such notice being required by statute (see §§ 224.2, subd. (f), 224.3, subd. (a)(5)), it has potential validity in addressing the adequacy of the Department's further inquiry under section 224.3, subdivision (e). It is up to the Department to establish that in its contact with the four tribes, the Department "shar[ed] information identified by the tribe as necessary for the tribe to make a membership or eligibility determination." (§ 224.2, subd. (e)(2)(C).)[12]

to the juvenile court at the time of the six-month review hearing. The document attached to the augmentation request, in any event, provides no information as to what may have been sent by the Department on July 30 and October 16, 2020.

[12] In making this point, we do not suggest that the Department's obligation to contact the tribe(s) under section 224.2 (e)(2)(C) in a "reason to believe" case is (continued)

As noted, the juvenile court and the Department "have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child" for ICWA purposes. (§ 224.2, subd. (a); see also *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 9.) Upon learning from the maternal grandmother in or about July 2020 that the minor could have Algonquian as well as Cherokee heritage, the Department had a statutory obligation to inquire further as to whether he was an Indian child "as soon as practicable." (§ 224.2, subd. (e).) In light of this information, obtained after the juvenile court had made a finding that the ICWA did not apply, and in light of the circumstances of the case, the Department should have conducted such further inquiry—including interviewing the parents and extended relatives, contacting the Bureau of Indian Affairs and the State Department of Social Services, and contacting the tribes that might be reasonably expected to have relevant information—and should have documented that further inquiry in its reports with a request to the court for updated ICWA findings. And the juvenile court should have made updated ICWA findings concerning whether the Department had complied with its statutory further inquiry obligations, whether there was a "reason to believe" or a "reason to know" the minor was an Indian child, and whether therefore the ICWA might, did, or did not apply to the proceedings. Since approximately six months had elapsed between the time of the maternal grandmother's disclosure to the six-month review hearing, and because that hearing resolved important issues in the case, including the termination of mother's reunification services, these updated ICWA findings should have been made at or before the review hearing.

We conclude further that the ICWA noncompliance here was not harmless error. (See *In re N.G.*, *supra*, 27 Cal.App.5th at p. 484 ["[i]n the absence of an appellate record

governed by the same formality required for notice to tribe(s) under section 224.3, subdivision (a)(5) in a "reason to know" case. (See *In re M.W.*, *supra*, 49 Cal.App.5th at p. 1047 ["a 'reason to believe' the minor is an Indian child triggers requirements less rigorous than does a 'reason to know' "].)

18

affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, . . . we will find the appellant's claims of ICWA error prejudicial and reversible"].)  We will therefore reverse the order after the six-month review hearing for the limited purpose of the Department providing an updated report concerning the discharge of its further inquiry obligations under the ICWA, and for the juvenile court to supplement its review hearing order with appropriate ICWA findings consistent with this opinion.

## III.    DISPOSITION

The January 12, 2021 order after the six-month review hearing pursuant to Welfare and Institutions Code section 366.21 is conditionally reversed.  The matter is remanded to the juvenile court with directions that the Department and the court comply with the further inquiry and, if appropriate, notice provisions of the Indian Child Welfare Act and of Welfare and Institutions Code sections 224.2 and 224.3, consistent with this opinion. The juvenile court's updated ICWA findings shall be deemed to supplement the court's order after the six-month review hearing, and that order shall otherwise remain in effect.

 

 

_____
BAMATTRE-MANOUKIAN, J.

 

 

WE CONCUR:

 

 

_____
ELIA, ACTING P.J.

 

 

_____
DANNER, J.

 

 

*In re J.G.; HSD v. N.L.*
**H048894**